**MATTLEMAN, WEINROTH & MILLER, P.C.**
By: Jeffrey A. Malatesta, Esquire
Attorney I.D. No.: 020802007
401 Rt. 70 East, Suite 100
Cherry Hill, NJ 08034
Tel. (856)-429-5507; Fax (856) 429-9036
Email: jmalatesta@mwm-law.com
Attorneys for Plaintiff, Jodie DaShore, O.T.D.

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| JODIE DASHORE, OTD, HHP, BCIP, SIC; <br><br> v. <br><br> JEAN ANDERSON a/k/a JEAN GHANTOUS a/k/a ROWYN ANDERSON a/k/a ROWYN BAKWIN | ____Civ. _____(____)(____) <br><br> **VERIFIED COMPLAINT** |

Jodie DaShore, OTD, HHP, BCIP, SIC ("Plaintiff") by and through her undersigned counsel, hereby files this complaint against Jean Anderson a/k/a Jean Ghantous a/k/a Rowyn Anderson a/k/a Rowyn Bakwin ("Defendant") and respectfully states as follows:

**PRELIMINARY STATEMENT**

1. This lawsuit is regarding false and defamatory statements, made by the Defendant, about the Plaintiff and her credentials and other actions by Defendant, designed to prevent prospective patients from treating with Plaintiff and designed to convince current patients to switch practitioners.

2. Defendant stated on social media, private messages and/or verbally, that Plaintiff was not a doctor, despite ample information being available, which Plaintiff had knowledge of, indicating that Plaintiff has a doctorate degree, and therefore is a

doctor. There were other false and defamatory statements, communicated by Defendant, as set forth herein.

3. Upon Information and belief, Defendant has taken these illegal actions to either compete unfairly with the Plaintiff's business or as retaliation for Plaintiff questioning the illegal medical advice being provided by Defendant online, to more than one of Plaintiff's patients.

4. Plaintiff is seeking an injunction to prevent Defendant from making further false and defamatory statements, to issue a retraction of prior false and defamatory statements, and to prevent Defendant from interfering with Plaintiff's current and prospective business. Plaintiff is also seeking money damages. Plaintiff has lost approximately fifty (50) active patients and/or prospective patients, from her 'brick and mortar' therapeutic practice in New Jersey, as a result of Defendant's conduct, as set forth herein.

## THE PARTIES & JURISDICTION & VENUE

5. Plaintiff is an individual and citizen of the United States and resident of the state of New Jersey and has a brick and mortar therapeutic practice in the State of New Jersey.

6. Defendant is a resident of the State of Illinois, residing at 739 Superior Ave., Calmet City, IL 60409.

7. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1), in that this is a civil action between a resident of the State of New Jersey and a resident of the State of Illinois and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

8. Venue is proper in this district under 28 U.S.C. § 1391(b)(2), in that a substantial part of the events giving rise to the claims, occurred in the District of New Jersey. Defendant's actions, while done via telecommunication and/or verbally, were done with the specific purpose and had the specific result, of damaging Plaintiff's 'brick and mortar' therapeutic practice in New Jersey. Patients in New Jersey have left treatment with Plaintiff due to the actions of Defendant.

## FACTS

9. In 2016, Plaintiff was the first clinician to speak at the International Autism One conference, about autism and the mold/biotoxin illness connection. Plaintiff is the pioneer of this therapy.

10. Defendant is the administrator and/or a participant and/or the creator of a Facebook Group known as "'Baby' Buhner, Cowden, Klinghardt and more" (the "Facebook Group"), which has a primary purpose of discussing treatment protocols, including autism and the mold/biotoxin illness connection. Unbeknownst to Plaintiff at the time, Defendant started the Facebook Group in or about 2016. Upon information and belief, more than sixty (60) of Plaintiff's patients were members of this group.

11. One of Plaintiff's patients sent Plaintiff an invite to the Facebook Group, because the patient noticed that Plaintiff and her treatment protocols were being discussed regularly. Plaintiff became a member of the Facebook Group.

12. In 2017, Plaintiff spoke for the second time, at the International Autism One conference. It is believed that Defendant was in the audience, and asked Plaintiff a question about Plaintiff's specific proprietary treatment protocol. This was not something Plaintiff was willing to speak publicly about (the information was

proprietary), nor was she permitted to do so per the conference rules against self-promotion. Plaintiff declined to provide her specific treatment protocol at the conference. After the conference, Plaintiff acquired numerous patients.

13. While viewing the Facebook Group, Plaintiff noticed that Defendant was dispensing medical advice to members of the Facebook Group, some of who were Plaintiff's active patients and/or parents of patients. Some were prospective patients. Some of the medical advice being dispensed by Defendant, was not only in direct contravention to Plaintiff's treatment protocol, but was also dangerous to the patient. Some of Defendant's medical advice was given to parents of a five (5) year old patient and the medical advice was erroneous and dangerous.

14. Plaintiff discovered that Defendant was taking Plaintiff's publicly available treatment information from publications and/or lectures, and was using parts of it as authority to dispense (incorrect) medical advice to the Facebook Group.

15. Plaintiff questioned Defendant about her provision of medical advice to Plaintiff's patients.

16. Defendant became upset and began posting negative and attacking statements about Plaintiff at every opportunity in the Facebook Group and in private messages. Defendant also began requesting that Plaintiff's patients post, in the Facebook Group, Plaintiff's confidential and proprietary treatment protocols. Some patients did post those protocols.

17. Each time one of Plaintiff's patients spoke in the group, Defendant would speak negatively about Plaintiff. Every person who defended the Plaintiff would be

removed from the Facebook Group. Then Defendant removed Plaintiff from the Facebook Group.

18. Defendant elicited other persons to connect to Plaintiff on social media (LinkedIn & Facebook) for the purpose of giving Defendant access to Plaintiff's profiles.

19. Defendant, then with access to Plaintiff's pages, scoured those pages for any discrepancy or way to discredit Plaintiff. For example, Plaintiff's birthday had a typographical error in it, and Defendant used such error to claim that Plaintiff's credentials may have been falsified.

20. Defendant elicited other persons to contact the host company for Autism One and claim that Plaintiff's credentials were falsified and to ask that Plaintiff be disinvited from speaking at future conferences.

21. As a result of Defendant's conduct, a large number of patients have left Plaintiff's practice and become patients of a competitor. It is unknown if Defendant is associated with the competitor. Defendant has stated that she herself, without claiming any licensure or certification, is now accepting patients for treatment.

22. In the Facebook Group, Defendant posted the following false and defamatory statements, regarding Plaintiff:

    a. In response to a question as to whether Plaintiff had a doctorate degree, Defendant posted: "No, she is a Ph.D. Candidate";

    b. "Dr. Dashore's LinkIn has also been taken down… her credentials have changed";

    c. "I questioned her and Buhner directly to her sometime back in since she said she practiced with him and he hasn't practiced in years."

    d. "She does actually KNOW Buhner and spoke with Julie McIntyre at some point, but that she worked with him is another story."

    e. "DaShore is not a doctor"

23. Defendant has sent private messages, though Facebook and/or other means, to persons who are not a parties to this lawsuit, which also contained false and defamatory statements about the Plaintiff.

## COUNT I
## PERMANENT INJUNCTION

24. Plaintiff reincorporates and re-alleges Paragraphs 1 through 23 as if fully set forth herein.

25. Plaintiff seeks an injunction to prevent Defendant from making further false and defamatory statements regarding the Plaintiff.

26. Plaintiff seeks an injunction requiring specific performance, that Defendant issue a statement of retraction, in the Facebook Group, and separately, by private message, to each person to whom a private message was sent containing a false and defamatory statement regarding the Plaintiff and/or the Plaintiff's medical practice.

**WHEREFORE**, Plaintiff respectfully requests equitable relief, that a permanent injunction be entered enjoining Defendant from making further false and defamatory statements and specific performance of issuing retractions of the false and defamatory statements.

## COUNT II
## DEFAMATION – LIBEL AND SLANDER

27. Plaintiff reincorporates and re-alleges Paragraphs 1 through 26 as if fully set forth herein.

28. Defendant made defamatory statement of facts.

29. Defendant's defamatory statements concerned the plaintiff.

30. Defendant's defamatory statements were false.

31. The defamatory statements were communicated to persons other than the plaintiff.

32. Defendant actually knew the statements were false when she communicated them, or Defendant communicated the statements with reckless disregard of their truth or falsity, or Defendant acted negligently in failing to ascertain the falsity of the statements before communicating them.

**WHEREFORE,** Plaintiff respectfully requests judgment be entered awarding damages in favor of Plaintiff in an amount to be determined at trial, but in no event less than, $250,000.00.

## COUNT III
## UNLAWFUL INTERFERENCE

33. Paragraphs 1-32 are incorporated herein, but for the sake of brevity not set forth.

34. At all relevant times, there existed a reasonable expectation of economic advantage or benefit belonging or accruing to the Plaintiff.

35. Defendant had knowledge of such expectancy of economic advantage.

36. Defendant wrongfully and without justification interfered with Plaintiff's expectancy of economic advantage or benefit.

37. In the absence of the wrongful acts of the Defendant it is reasonably probable that the Plaintiff would have realized its economic advantage or benefit.

38. The Plaintiff sustained damages as a result thereof.

**WHEREFORE,** Plaintiff seeks judgment in the form of money damages in the amount of $250,000.00, compensatory damages, punitive damages, attorney's fees, costs of litigation, interest and any other damages as the court deems in the interest of justice.

## COUNT IV
## TORTIOUS INTERFERENCE WITH CONTRACT

39. Paragraphs 1-39 are incorporated herein, but for the sake of brevity not set forth.

40. At all relevant times, there existed a contract between the Plaintiff and her active patients.

41. Defendant had knowledge of these contracts.

42. Defendant intentionally, and maliciously, with motive to harm and without justification, interfered with the contractual relations existing between the Plaintiff and multiple patients by inducing, procuring or causing a breach or termination of the Contract and/or the patient – therapist relationship between Plaintiff and each patient, and such conduct went beyond or transgressed generally accepted standards of morality; and/or socially acceptable conduct.

43. In the absence of the wrongful acts of the Defendant it is reasonably probable that the Plaintiff would have realized its economic advantage or benefit.

44. The Plaintiff sustained damages as a result thereof.

**WHEREFORE**, Plaintiff seeks judgment in the form of money damages in the amount of $250,000.00, compensatory damages, punitive damages, attorney's fees, costs of litigation, interest and any other damages as the court deems in the interest of justice.

MATTLEMAN, WEINROTH & MILLER
Attorneys for Plaintiff

DATED: 10/11/2018          By:___/s/ Jeffrey A. Malatesta, Esq.

I declare under penalty of perjury, that the foregoing is true and correct. Executed on 10/12/18.

Jodie DaShore, O.T.D.