*NOT FOR PUBLICATION*

*NOT FOR PUBLICATION*

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JODIE DASHORE,<br>*OTD, HHP, BCIP, SIC*<br><br>      Plaintiff,<br><br>v.<br><br>JEAN ANDERSON,<br>also known as JEAN GHANTOUS<br>also known as ROWYN ANDERSON<br>also known as ROWYN BAKWIN,<br><br>      Defendant. | Civil Action No.:18-15554(FLW)<br><br>**OPINION** |

**WOLFSON, Chief Judge:**

      Presently before the Court is Defendant Jean Anderson's ("Defendant") motion to dismiss Plaintiff Jodie Dashore's ("Plaintiff") Complaint for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). Plaintiff filed her three-count Complaint, alleging that (1) Defendant made defamatory statements about Plaintiff on a social media site; (2) Defendant's actions constitute unlawful interference with prospective economic advantage; and (3) Defendant tortiously interfered with an existing contract. These claims arise out of statements that Defendant allegedly made about Plaintiff's medical treatment methods for patients with Autism in a Facebook group to which they both belonged. In the instant matter, Defendant moves for dismissal of all claims. For the reasons set forth below, Defendant's motion to dismiss is **GRANTED** in part and **DENIED** in part as follows: Defendant's motion is denied with respect to Plaintiff's defamation claim, and all other claims are dismissed without prejudice. Plaintiff has leave to amend the Complaint, consistent with the dictates of this Opinion, within 30 days from the date of the accompanying Order.

1

**I.  BACKGROUND**

In addressing Defendant's Motion to Dismiss, this Court must accept Plaintiff's allegations contained in the Complaint as true. See Toys "R" Us, Inc. v. Step Two, S.A., 318 F.3d 446, 457 (3d Cir. 2003); Dayhoff, Inc. v. H.J. Heinz Co., 86 F.3d 1287, 1302 (3d Cir. 1996). Thus, the facts recited below are taken from the Complaint and do not represent this Court's factual findings.

Plaintiff is a clinician who works in autism and the mold/biotoxin illness connection. Compl., ¶ 9.  On two separate occasions, in 2016 and 2017, Plaintiff spoke at the International Autism One Conference; after the conference that took place in 2017, Plaintiff claims that she had acquired numerous patients. Id. at ¶¶ 9, 12.  Defendant is the administrator of a Facebook Group known as "'Baby' Buhner, Cowden, Klinghardt, and more" (the "Facebook Group").[1] Id. at ¶ 10. Many of Plaintiff's patients are allegedly members of the Facebook Group, and Plaintiff was a former member of the Facebook Group. Id. at ¶¶ 10, 11.

Plaintiff alleges that after she joined the Facebook Group, she noticed that Defendant was giving medical advice to Plaintiff's patients and some unidentified prospective patients. Id. at ¶ 13. Plaintiff claims that some of the advice that Defendant was giving was contrary to Plaintiff's own treatment protocol, and they were dangerous to patients. Id. After Plaintiff questioned Defendant regarding the alleged medical advice, Defendant purportedly became upset and posted negative statements about Plaintiff, some of which were in response to comments by Plaintiff's patients. Id. at ¶¶ 15-17.

---

[1]  Defendant's profession is not clearly alleged in the Complaint; rather, the pleadings make vague references to Defendant "accepting patients for treatment," and other allegations that allude to the fact that Defendant, a purported competitor of Plaintiff, also treats patients with autism. See Compl., ¶¶ 13-14, 21.

Thereafter, Defendant allegedly removed Plaintiff from the Facebook Group. Id. at ¶ 17. Plaintiff also avers that Defendant elicited other people to contact the host company of Autism One to make false claims that Plaintiff's credentials were inaccurate. Plaintiff further alleges that these unidentified individuals asked the host company to disinvite Plaintiff from speaking at future conferences. Id. at ¶ 20. Because of Defendant's conduct, Plaintiff maintains that she has lost numerous patients to a competitor. Id. at ¶ 21.

Based on these allegations, Plaintiff brought suit, asserting claims of defamation and tortious interference with existing contract, as well as future economic advantage. In that regard, Plaintiff avers that the following statements made by Defendants were false and defamatory ("Defendant's statements"): (1) in response to a question as to whether Plaintiff had a doctorate degree, Defendant posted: "No, she is a Ph. D. Candidate."; (2) "Dr. Dashore's LinkIn (sic) has also been taken down…her credentials have changed"; (3) "I questioned her and Buhner directly to her sometime back in since (sic) she said she practiced with him and he hasn't practiced in years"; (4) "she does actually KNOW Buhner and spoke with Julie McIntyre at some point, but that she worked with him is another story"; (5) "DaShore is not a doctor." Id. at ¶ 22.

## II. STANDARD OF REVIEW

When considering a motion to dismiss a complaint for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6), a court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiff. Evancho v. Fisher, 423 F.3d 347, 351 (3d Cir. 2005). It is well settled that a pleading is sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, "[a]lthough the Federal Rules of Civil Procedure do not require a claimant to set forth an intricately detailed description of the asserted basis for relief, they do

3

require that the pleadings give defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Baldwin Cnty. Welcome Ctr. v. Brown, 466 U.S. 147, 149-50 (1984). A district court, in weighing a motion to dismiss, asks "'not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim.'" Bell Atlantic v. Twombly, 550 U.S. 544, 583 (2007) (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)); see also Ashcroft v. Iqbal, 556 U.S. 662, 684 (2009) ("Our decision in Twombly expounded the pleading standard for all civil actions."); Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) ("Iqbal ... provides the final nail-in-the-coffin for the 'no set of facts' standard that applied to federal complaints before Twombly.").

Following the Twombly/Iqbal standard, the Third Circuit applies a two-part analysis in reviewing a complaint under Rule 12(b)(6). First, a district court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Fowler, 578 F.3d at 210. Second, a district court must determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." Id. A complaint must do more than allege the plaintiff's entitlement to relief. Id. However, this standard "'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element.'" Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (quoting Twombly, 127 S. Ct. at 1965; see also Covington v. Int'l Ass'n of Approved Basketball Officials, 710 F.3d 114, 118 (3d Cir. 2013) ("[A] claimant does not have to set out in detail the facts upon which he bases his claim… The pleading standard is not akin to a probability requirement . . . to survive a motion to dismiss, a complaint merely has to state a plausible claim for relief." Nonetheless, a court need not credit either "bald assertions" or "legal conclusions" in a complaint when deciding a motion to dismiss. In re

Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1429-30 (3d Cir. 1997). The defendant bears the burden of showing that no claim has been presented. Hedges v. U.S., 404 F.3d 744, 750 (3d Cir. 2005) (citing Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1409 (3d Cir. 1991)).

Finally, a court in reviewing a Rule 12(b)(6) motion must only consider the facts alleged in the pleadings, the documents attached thereto as exhibits, and matters of judicial notice. Southern Cross Overseas Agencies, Inc. v. Kwong Shipping Grp. Ltd., 181 F.3d 410, 426 (3d Cir. 1999).

## III. DISCUSSION

### A. Defamation Claim

Count II[2] of the Complaint asserts a claim for defamation, which includes the common law of slander and libel. To properly plead defamation, a plaintiff must allege: (1) the assertion of a false and defamatory statement concerning another; (2) the unprivileged publication of that statement to a third party; and (3) fault amounting at least to negligence by the publisher. Ross v. Bd. of Educ., 658 Fed. Appx. 97, 100 (3d Cir. 2016)(quoting DeAngelis v. Hill, 180 N.J. 1, 13 (2004)). In addition to those elements, the plaintiff must also plead damages as a result of the alleged defamation. Peishu Zheng v. Quest Diagnostics, Inc., 248 Fed. Appx. 416, 418-19 (3d Cir. 2007)(citing Feggans v. Billington, 291 N.J. Super. 382, 390 (App. Div. 1996)). Importantly, as a threshold matter, the plaintiff must identify the particular statement that the defendant made that was defamatory in nature. See Ross, 658 Fed. Appx. at 100.

---

[2] Count I of Plaintiff's Complaint asserts a claim for injunctive relief; however, because injunctive relief is not a separate cause of action, but rather, a remedy, that claim is dismissed. See Educ. Impact, Inc. v. Danielson, No. 14-937, 2015 U.S. Dist. LEXIS 9467, at *3 (D.N.J. Jan. 28, 2015); Dunn v. Lehigh Valley Ctr. for Sight, P.C., No. 03-190, 2003 U.S. Dist. LEXIS 17727, at *12 (E.D. Pa. Sep. 30, 2003)("Under proper circumstances injunctive relief may be awarded to remedy a violation . . . . However, injunctive relief is not a separate cause of action . . . ").

Here, Defendant contends that Plaintiff has failed to adequately allege the first element – that Defendant's statements were defamatory. A defamatory statement is one that is false and injurious to someone's reputation. Taj Mahal Travel, Inc. v. Delta Airlines Inc., 164 F.3d 186, 189 (3d Cir. 1998); Paul v. United Parcel Serv., No. 05-1918, 2005 U.S. Dist. LEXIS 31316, at *2 (D.N.J. Dec. 6, 2005). Whether a statement is defamatory is a fact-specific question: it requires an analysis of "(1) the content, (2) the verifiability, and (3) the context" of the allegedly defamatory statement. Leang v. Jersey City Bd. Of Educ., 198 N.J. 557, 585 (2009). On one hand, factual statements are those capable of verification, *i.e.*, falsifiable in relation to external realities. See Ward v. Zelikovsky, 136 N.J. 516, 530 (1994). On the other hand, statements of opinion are not actionable, because they reflect only one's state of mind. Id. at 531.

A plaintiff must also plead and ultimately prove special damages, which are defined as "harm of a material or pecuniary nature." Ward v. Zelikovsky, 136 N.J. 516, 540 (1994); see also Sisler v. Gannett Co., Inc., 104 N.J. 256, 516 (1986) (holding that even though injury to reputation "defies exact measurement," a plaintiff "should offer some concrete proof that his reputation has been injured"). A plaintiff's own testimony or "inferred" damages will not suffice. Ward, 136 N.J. 516 at 540.

Here, in analyzing whether the alleged statements are defamatory, the Court groups Defendant's statements into two categories:

1. Defendant's statements (1) and (5): (1) In response to a question as to whether Plaintiff had a doctorate degree, Defendant posted: "No, she is a Ph. D. Candidate"; (5) "DaShore is not a doctor." (Category One)

2. Defendant's statements (2), (3), and (4): (2) "Dr. Dashore's LinkIn has also been taken down…her credentials have changed"; (3) "I questioned her and Buhner directly to her sometime back in since (sic) she said she practiced with him and he hasn't practiced in years"; (4) "She does actually KNOW Buhner and spoke with Julie McIntyre at some point, but that she worked with him is another story." (Category Two)

*1. Category One*

Category One statements involve the assertion that Plaintiff is not a doctor, but rather a candidate for Ph.D. As to the statements' falsity, the Complaint avers that there is "ample information…available…indicating that Plaintiff has a doctorate degree, and therefore is a doctor." See Compl. ¶ 2. This allegation contradicts Defendant's alleged statements that "DaShore is not a doctor" and her answer of "No" when asked if Plaintiff had a doctorate degree. In that regard, Plaintiff has sufficiently alleged that Category One statements are false, and not merely opinions. Plaintiff also sufficiently alleges that those statements are defamatory in nature. In particular, Plaintiff avers that she suffered reputational harm as a result of Defendant's statements; indeed, the Complaint contains allegations that as a result of Defendant's statements, she has lost approximately 50 patients, see Compl., ¶ 4, which were existing relationships that have been "seriously disrupted." Sisler, 104 N.J. 256 at 281. Based on these statements, at this motion to dismiss stage, I find that Plaintiff has properly stated a claim of defamation based on Category One statements.

*2. Category Two*

Category Two statements involve Plaintiff's professional credentials and connections. However, unlike Category One, Plaintiff fails to allege that Category Two statements are false. With regards to these statements, Plaintiff claims, in conclusory terms, that they are defamatory and false. But, Plaintiff goes no further in elaborating upon their falsehood. Indeed, Plaintiff does not plead any facts in her Complaint as to the verifiable truth regarding these statements. For example, Defendant allegedly stated that "Dr. Dashore's LinkIn has also been taken down . . . her credentials have changed." Compl., ¶ 22b. Plaintiff neither explain the status of her LinkedIn page, nor does she explain to which credentials Defendant were referring and the status of those

7

credentials. While Plaintiff alleges that her birthdate had a typographical error and that Defendant used such discrepancy to discredit Plaintiff, Plaintiff does not allege that the "birthdate error" was the credential that was altered. In any event, even if that error was made, such allegation tends to make the statement in question truthful, rather than false. Consequently, none of Category Two statements, as pled, can reasonably be interpreted as defamatory.

Accordingly, Plaintiff's defamation claim, as it relates to the Category One statements, is properly pled; however, the claim involving Category Two statements is dismissed without prejudice.

### B. Unlawful Interference with Prospective Economic Advantage Claim

Count III asserts a claim for unlawful interference with prospective economic advantage. To properly plead such a claim, a plaintiff must allege that: (1) she had a reasonable expectation of an economic benefit; (2) defendant's knowledge of that expectancy; (3) defendant's wrongful, intentional interference with that expectancy; (4) the reasonable probability that the claimant would have received the anticipated economic benefit, but for defendant's interference; and (5) damages resulting from that interference. Fineman v. Armstrong World Industries, Inc., 980 F.2d 171, 186 (3d Cir. 1992).

#### *1. Reasonable Expectation of Economic Benefit or Advantage*

To establish this element, Plaintiff must allege facts "giving rise to some 'reasonable expectation of economic advantage.'" Printing Mart-Morristown v. Sharp Electronics Corp., 116 N.J. 739, 751 (1989) (quoting Harris v. Perl, 41 N.J. 455, 461 (1964)); see Med Alert Ambulance, Inc. v. Atlantic Health System, Inc., No. 04-1615, 2007 U.S. Dist. LEXIS 57083, at *16 (D.N.J. Aug. 16, 2007) (emphasis added). "Without searching far, courts have succeeded in finding a reasonable expectation of economic benefit." Printing Mart, 116 N.J. at 753. Courts find a

reasonable expectation of economic benefit where the sale is to the public at large. Id. at 751-53; see Di Cristofaro v. Laurel Grove Memorial Park, 43 N.J. Super. 244, 255-56 (App. Div. 1957) (the court found that an independent maker of cemetery markers had a reasonable expectation of selling monuments to the public, which had been interfered with by a grave-marker-fee requirement imposed by a cemetery); see also Graco, Inc. v. PMC Global, Inc., No. 08-1304, 2009 U.S. Dist. LEXIS 26845 at *32 (D.N.J. Mar. 31, 2009).

For example, the court in Teva Pharm. Indus., Ltd. v. Apotex, Inc., Civ. No. 07-5514, 2008 U.S. Dist. LEXIS 60418 (D.N.J. Aug. 8, 2008), found that the plaintiff's allegation that it "has a continuing, economically advantageous relationship for the supply of carvedilol for use in its carvedilol products" sufficient to establish a reasonable expectation of prospective economic benefit. Id at *27-29; see Graco, 2009 U.S. Dist. LEXIS 26845, at *32 (Plaintiff "alleges a reasonable expectation of an economic benefit from selling products to customers in the trade with which [defendant] intentionally and wrongfully interfered."). In short, a complaint must demonstrate, at the very least, that the plaintiff was in "pursuit of business." Printing Mart, 116 N.J. at 739; see Ideal Dairy Farms, Inc. v. John Labatt, Ltd., 90 F.3d 737, 747 (3d Cir. 1996); Med Alert, 2007 U.S. Dist. LEXIS 57083, at *16.

Here, Plaintiff has arguably satisfied the pleading requirement for this element. Plaintiff claims that she had numerous patients in her autism treatment practice is an indication that she was "in pursuit of business." Indeed, Plaintiff's ongoing business as an autism clinician suggests a general expectation that she would continue to obtain clients for her practice in the future, thus satisfying the requirement for her reasonable expectation of economic benefit.

9

## 2. *Wrongful, Intentional Interference*

Wrongful and intentional interference requires Plaintiff to allege that Defendant acted with "malice." Printing Mart, 116 N.J. at 756; see Pactiv Corp. v. Perk-Up, Inc., No. 08-05072, 2009 U.S. Dist. LEXIS 72796, at *12 (D.N.J. Aug. 18, 2009). Malice is not used in the literal sense requiring a showing of ill will toward the plaintiff. Id. Instead, for the purposes of this prong, malice is defined as a harm that was inflicted intentionally and without justification or excuse. Id. The relevant inquiry is whether the defendant's conduct was sanctioned by the "rules of the game." Printing Mart, 116 N.J. at 757. In that regard, the New Jersey Supreme Court explained:

> In this area of the law the use of such expressions as conspire, unlawful, malicious, etc., has been criticized as beclouding judgment and clear thinking in the formulation of rules of liability. Yet a degree of generality in the criteria which will suffice to spell out liability in any given case of this kind is unavoidable. The essence of the cases in this field is that in adjudging whether what the defendant has done is actionable, i.e., not done in the exercise of an equal or superior right, the ultimate inquiry is whether the conduct was "both injurious and transgressive of generally accepted standards of common morality or of law." In other words, was the interference by defendant "sanctioned by the 'rules of the game.'" There can be no tighter test of liability in this area than that of the common conception of what is right and just dealing under the circumstances. Not only must [a] defendant[']s[] motive and purpose be proper but so also must be the means.

Id. (internal citation omitted)

Here, Plaintiff's Complaint alleges that Defendant's actions were "designed to prevent prospective patients from treating with Plaintiff and designed to convince current patients to switch practitioners" and that Defendant "wrongfully and without justification interfered with Plaintiff's expectancy of economic advantage or benefit." See Compl., ¶¶ 1, 35. However, these are Plaintiff's lone references to Defendant's intent. While Plaintiff alleges that Defendant posted certain negative statements about Plaintiff in the Facebook Group, Plaintiff does not allege facts that support her conclusory assertion that Defendant's "motive and purpose" was improper. See Pactiv Corp., 2009 U.S. Dist. LEXIS 72796, at *12. At best, the allegations show that Defendant,

10

a competitor of Plaintiff, was engaged in competitive conduct when she commented on Defendant's practice, and competition, alone, is not sufficient to show malice. *See Lamorte Burns & Co. v. Walters*, 167 N.J. 285, 302 (2001)(finding that the malice element of tortious interference is not satisfied if it is merely competitive conduct). Without pleading any other facts, Plaintiff's claim that Defendant interfered with Plaintiff's expectancy of economic advantage is an unsupported legal conclusion.

### 3. *Knowledge of Expectancy and Reasonable Probability to Receive the Anticipated Economic Benefit in Absence of Interference*

While Plaintiff has properly pled the existence of their reasonable expectation of economic benefit or advantage, she has not included any facts in her complaint alleging that Defendant had knowledge of such expectancy. Compl. ¶ 35. This element is, therefore, also insufficiently pled.

Finally, to establish the reasonable probability element, rather than alleging that the interference caused the breach or loss of the contract, the plaintiff must allege that but for the interference, there was a reasonable probability that the plaintiff would have received the anticipated economic benefit. Printing Mart, 116 N.J. at 759-60. Plaintiff has not pled any details to suggest that it was reasonably probable that she would have achieved economic benefit in absence of Defendant's interference. This is particularly true with regards to the allegation that Defendant solicited others to call Autism One to encourage the organization to disinvite Plaintiff as a speaker. In that regard, Plaintiff has only alleged that speaking at the event may lead to additional patients, but those allegations of economic benefits are speculative in nature. As such, for the foregoing reasons, the claim for unlawful interference with prospective economic advantage is dismissed.

### C. Tortious Interference with Contract Claim

Count IV of the Complaint asserts a claim of tortious interference with an existing contract. To assert such a claim, a plaintiff must plead the same elements as a claim for tortious interference with a prospective economic benefit, plus the additional element of a contract. Hong Kong Ibesttouch Tech. Co. v. iDistribute LLC, No. 17-2441, 2018 U.S. Dist. LEXIS 89815, at *9 (D.N.J. May 30, 2018); Med Alert Ambulance, Inc. v. Atlantic Health System, Inc., No. 04-1615, 2007 U.S. Dist. LEXIS 57083, at *43 (D.N.J. Aug. 6, 2007); See Graco, 2009 U.S. Dist. LEXIS 26845. Here, Defendant contends that Plaintiff has failed to adequately allege the additional element – that Plaintiff does not plead the existence of contracts between her and her patients, much less Defendant's knowledge of such a contract.

I agree with Defendant's contention. In an attempt to plead the existence of a contract, Plaintiff claims that "at all relevant times, there existed a contract between the Plaintiff and her active patients." Compl. ¶ 30. However, at no point in her Complaint does Plaintiff plead any facts regarding an existing contract between her and her patients. Indeed, while Plaintiff alleges that she has some unidentified patients merely by referring to the fact that she acquired patients after the 2017 Autism One conference, and by referring to Defendant's statements which were, in some cases, in response to posts in the Facebook Group by other unspecified patients of Plaintiff, id. at ¶¶ 12-17, Plaintiff does not identify any of her patients and provides no further information about her relationship with them, let alone information sufficient to allege the existence of contracts between them. More importantly, there are no allegations that Defendant had any knowledge that those she interacted with were Plaintiff's patients, such that Defendant intentionally and with malice targeted the existing relationships between Plaintiff and her patients. For these reasons, this claim is also dismissed.

## V. CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is **GRANTED** in part and **DENIED** in part as follows: Defendant's motion is denied with respect to Plaintiff's defamation claim, and all other claims are dismissed without prejudice. Plaintiff has leave to amend the Complaint, consistent with the dictates of this Opinion, within 30 days from the date of the accompanying Order.

DATED: September 27, 2019 /s/ Freda L. Wolfson
Freda L. Wolfson
U.S. Chief District Judge